**Slip Op. 07-184**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|   |   |
|---|---|
| TRUSTEES IN BANKRUPTCY OF NORTH AMERICAN RUBBER THREAD CO., INC., FILMAX SDN. BHD., HEVEAFIL USA, INC., AND HEVEAFIL SDN. BHD.,<br><br>　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>UNITED STATES,<br><br>　　　　　Defendant. | Before: Richard W. Goldberg,<br>　　　　　Senior Judge<br><br>Consol. Court No. 05-00539 |

**<u>OPINION</u>**

[Commerce's refusal to initiate a changed circumstances review is remanded.]

Date: December 21, 2007

<u>Miller & Chevalier Chartered</u> (<u>Peter J. Koenig</u>) for Plaintiff Trustees in Bankruptcy of North American Rubber Thread Co., Inc.

<u>White & Case, LLP</u> (<u>Walter J. Spak, Emily Lawson, and Jay C. Campbell</u>) for Plaintiffs Filmax Sdn. Bhd., Heveafil USA, Inc., and Heveafil Sdn. Bhd.

<u>Jeffrey S. Bucholtz</u>, Acting Assistant Attorney General; United States Department of Justice; <u>Jeanne E. Davidson</u>, Director, and <u>Patricia M. McCarthy</u>, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, (<u>Stephen C. Tosini</u>); <u>David W. Richardson</u>, Of Counsel, Office of Chief Counsel for Import Administration, Department of Commerce for Defendant United States.

**GOLDBERG, Senior Judge**:  This case is before the Court on

Plaintiffs' motion for judgment upon the agency record.

Plaintiffs are Trustees in Bankruptcy of North American Rubber

Thread Co., Inc., the successor-in-interest to the North American Rubber Thread Co., Inc. (together, **"NART"**), and Malaysian rubber manufacturer Heveafil, consisting of Filmax Sdn. Bhd, Heveafil USA Inc., and Heveafil Sdn. Bhd. (together, **"Heveafil"**).[1]  Plaintiffs seek judicial review of a decision by the U.S. Department of Commerce (**"Commerce"**) to not initiate a changed circumstances review of an antidumping duty order. Plaintiffs allege that Commerce's decision was arbitrary, capricious, or otherwise not in accordance with law.  For the reasons that follow, the Court remands Commerce's refusal to initiate the changed circumstances review for further consideration consistent with this opinion.

## I.   BACKGROUND

The procedural history of this case is set forth at length in Trustees in Bankruptcy of North American Rubber Thread Co. v. United States, 30 CIT __, __, 464 F. Supp. 2d 1350, 1351-53 (2006) (**"NART"**).  Briefly, the relevant facts are as follows: In 1992, Commerce published an antidumping duty order on extruded rubber thread from Malaysia (the **"Order"**). Approximately six years later, Commerce completed an administrative review of the Order for the period of October 1,

---

[1] NART and Heveafil commenced separate actions in this Court challenging Commerce's refusal to initiate the second changed circumstances review.  Those actions were consolidated into the present action.

1995 through September 30, 1996.  Heveafil challenged the results of the 1995-1996 review, and liquidation of the entries covered by that review was suspended.[2]

In 2004, Commerce granted Heveafil's request to conduct a changed circumstances review of the Order, pursuant to 19 U.S.C. § 1675(b)(1), on the basis that NART, the sole manufacturer of the domestic like product, had filed for bankruptcy and ceased operations.  NART agreed with Commerce's preliminary decision that changed circumstances warranted revocation of the Order effective October 1, 2003 — the first day of the most recent period of administrative review and the only period for which an administrative review had not been completed.  Heveafil disputed this effective date and argued that Commerce should revoke the Order effective October 1, 1995.  This earlier date would cover all unliquidated entries of the subject imports.  Commerce ultimately revoked the Order and selected October 1, 2003 as the effective date of revocation.[3]

---

[2] Heveafil challenged those results before this Court and the U.S. Court of Appeals for the Federal Circuit, which remanded the case back to this Court.  See Heveafil Sdn. Bhd. v. United States, Appeal Nos. 02-1085, 02-1086, 02-1087 (Fed. Cir. Mar. 19, 2003) (unpublished).  That case has been stayed pending the outcome of the present action.

[3] Heveafil challenged the results of the first changed circumstances review in this Court.  That case has been stayed pending the outcome of the present action.

On February 18, 2005, NART changed its position supporting Commerce's effective date of revocation. NART requested that Commerce initiate another changed circumstances review seeking retroactive revocation of the Order effective October 1, 1995— the earlier date requested by Heveafil in the first changed circumstances review. NART explained in its request that it no longer had an interest in the enforcement or existence of the Order as of that earlier date.

Commerce then notified NART by letter of its refusal to initiate the second changed circumstances review. Commerce explained that a changed circumstances review must be conducted in the context of an existing order and that "revoking an order to cover entries subjected to a completed administrative review would be contrary to the Department's long-standing practice." See Compl., Dec. 6, 2005, Ex. 1 (Commerce's response to request for changed circumstances review dated June 15, 2005). Specifically, Commerce stated that it was unable to conduct the requested review because "1) all administrative reviews of [the subject imports] have been completed; and 2) there is no existing order for which to initiate a changed circumstances review . . . ."[4] Id.

---

[4] In the letter stating its refusal to initiate, Commerce stated two separate grounds for its decision: (1) the fact that all

(footnote continued)

In the present action, Plaintiffs request the Court to order Commerce to initiate a changed circumstances review to consider changing the effective date of revocation of the Order from October 1, 2003 to October 1, 1995.

## II.  JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction under 28 U.S.C. § 1581(i).  See NART, 30 CIT at __, 464 F. Supp. 2d at 1364 (denying Commerce's motion to dismiss for lack of subject matter jurisdiction and failure to state a cause of action).  When a matter is within the subject matter jurisdiction of § 1581(i), the Court will set aside an action by Commerce if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2000); see 28 U.S.C. § 2640(e) (2000).

## III.  DISCUSSION

### A. Changed Circumstances Reviews

Antidumping law grants Commerce the authority to revoke an antidumping order based on changed circumstances.  See 19 U.S.C. § 1675(b), (d) (2000).  Commerce is required to conduct a changed circumstances review whenever it receives a request by

---

administrative reviews of extruded rubber thread from Malaysia had been completed; and (2) there was no existing order for which to initiate a changed circumstances review.  Commerce did not elaborate on the second ground (the "no existing order" rationale) in the letter or in its brief.  The Court is unable to individuate these two separate arguments from Commerce's brief, and thus will address Commerce's legal arguments as they are raised in its brief.

an interested party that "shows changed circumstances sufficient to warrant a review" of an antidumping duty order. § 1675(b)(1). Commerce's regulations elaborate on this requirement, stating that Commerce may revoke an order if "[p]roducers accounting for substantially all of the production of the domestic like product to which the order (or the part of the order to be revoked) . . . pertains have expressed a lack of interest in the order, in whole or in part . . . ." 19 C.F.R. § 351.222(g) (2006); see Or. Steel Mills Inc. v. United States, 862 F.2d 1541, 1545 (Fed. Cir. 1988) (holding that lack of industry support alone is a ground for revocation); Stainless Steel Plate in Coils from Italy, 71 Fed. Reg. 15380 (Dep't Commerce Mar. 28, 2006) (final results of changed circumstances review) (revoking countervailing duty order based on lack of industry support).

In its request for a changed circumstances review, NART clearly established lack of industry support for the continuation of the Order as it applies to unliquidated entries for the 1995-1996 period of review. In its refusal to initiate the review, Commerce did not base its decision on whether NART demonstrated changed circumstances sufficient to warrant a review. Instead, Commerce stated that the agency was without authority and it would be contrary to long-standing practice to

revoke an order to cover entries subject to a completed administrative review.

### B. Authority to Conduct a Changed Circumstances Review for Entries Subject to a Completed Administrative Review

Commerce argues that it unambiguously lacks the authority to initiate a changed circumstances review concerning the 1995-1996 entries because they were subject to a completed administrative review.  Commerce explicitly asks the Court to apply step one of the two-step test set forth in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).  In order to decide whether Commerce has interpreted a statute in accordance with law, step one directs the Court to determine "whether Congress has directly spoken to the precise question at issue."  Id. at 842.  To make this determination, the Court first looks at the statute's text to ascertain its plain and unambiguous meaning.  See Timex V.I., Inc. v. United States, 157 F.3d 879, 882 (Fed. Cir. 1998).  If the statute's plain meaning speaks directly to the precise question at issue, that meaning is the law and the Court's inquiry ends.  See id. ("Because a statute's text is Congress's final expression of its intent, if the text answers the question, that is the end of the matter.").

Commerce claims that 19 U.S.C. § 1675(a) unambiguously precludes the inclusion of unliquidated entries subject to a

completed administrative review within the scope of a changed circumstances review. Section 1675(a) governs periodic reviews of countervailing or antidumping duty orders.[5] The agency's determination pursuant to § 1675(a) is thus the basis for the assessment of duties pursuant to the order. See § 1675(a)(2)(C). Once this determination is made and published, Commerce claims that the results cannot be altered pursuant to a changed circumstances review.[6] According to Commerce, the antidumping duties calculated in the final results of the 1995-1996 administrative review must be assessed on the 1995-1996 entries.

Commerce fails to account for 19 U.S.C. § 1675(d)(3) in its analysis. This statute governs the revocation of an order, and states that a determination to revoke an order "shall apply with respect to unliquidated entries of the subject merchandise which are entered, or withdrawn from warehouse, for consumption on or after the date determined by the administering authority."

---

[5] As distinguished from changed circumstances reviews (governed by 19 U.S.C. § 1675(b)), Commerce conducts a periodic administrative review to review an existing antidumping duty order and determine the appropriate amount of duty (if any) that should continue to apply to the imports under review. It may be conducted "[a]t least once during each 12-month period beginning on the anniversary of the date of publication of a . . . duty order . . . ." 19 U.S.C. § 1675(a).

[6] Commerce does concede that it may reopen a completed administrative review pursuant to its inherent authority to remedy fraud. See Def.'s Resp. in Opp'n to Pls.' Mot. for J. on the Agency R. 9.

§ 1675(d)(3). This section gives the agency discretion to select the effective date of revocation and presents no conflict with the provisions of § 1675(a) that Commerce discusses. In its request to initiate a changed circumstances review, NART does not challenge the results or the basis of the completed 1995-1996 review. Instead, it merely seeks retroactive revocation of an order so the unliquidated entries will be assessed under a different duty rate. Cf. Ugine and Alz Belgium, N.V. v. United States, Slip Op. 07-145, 2007 Ct. Int'l Trade LEXIS 146, at *46 (CIT Oct. 1, 2007) (holding that Commerce is not barred from "regularly applying negative scope determinations retroactively to unliquidated entries from previous administrative review periods").

Commerce fails to show that the text of § 1675(a) unambiguously addresses the precise question at issue in this case and adduces no evidence regarding congressional intent in support of its argument. This Court has held that pursuant to § 1675(d)(3), "[i]f Commerce finds changed circumstances sufficient to justify revocation, the effective date of revocation is within Commerce's discretion." Okaya (USA), Inc. v. United States, 27 CIT 1509, 1511 (2003). No statutory language limits Commerce's discretion to select an effective date of revocation that predates a completed administrative review. Contrary to its current position, Commerce itself has

cited to §§ 19 U.S.C. 1675(b) and (d) and 1677m(h)[7] to support its decision to retroactively revoke an order covering unliquidated entries subject to a previously completed review. See Porcelain-on-Steel Cookware from Mexico, 67 Fed. Reg. 19553, 19554 (Dep't Commerce Apr. 22, 2002) (final results of changed circumstances review) (**"POS Cookware"**).

As Commerce is not prevented by statute from initiating a changed circumstances review to change the effective date of revocation under the facts of this case, the Court will now address Plaintiffs' argument that Commerce acted arbitrarily and capriciously, or otherwise not in accordance with law, when it refused to initiate the changed circumstances review.

### C. Commerce Failed to Provide a Reasonable Explanation for Its Departure from Past Practices When It Refused to Initiate a Changed Circumstances Review

The crux of NART's argument is that Commerce's refusal to initiate the changed circumstances review was arbitrary, capricious or otherwise not in accordance with law. Commerce acts arbitrarily and capriciously when it "consistently followed a contrary practice in similar circumstances and provided no reasonable explanation for the change in practice." Consol.

---

[7] Section 1677m(h) states in relevant part: "[t]he administering authority may . . . revoke an order . . . if the administering authority determines that producers accounting for substantially all of the production of th[e] domestic like product, have expressed a lack of interest in the order . . . ." 19 U.S.C. § 1677m(h)(2) (2000).

Bearings Co. v. United States, 348 F.3d 997, 1007 (Fed. Cir. 2003); see also British Steel PLC v. United States, 127 F.3d 1471, 1475 (Fed. Cir. 1997) (explaining that "[a]n agency is obligated to follow precedent, and if it chooses to change, it must explain why" (internal quotations omitted)).

In past agency decisions, Commerce has initiated changed circumstances reviews upon the domestic industry's expression of no interest so as to revoke orders retroactively to cover unliquidated entries.  Commerce has done so even when certain unliquidated entries had already been subject to a completed administrative review or automatic assessment.[8]  See POS Cookware, 67 Fed. Reg. at 19554; Certain Cold-Rolled Carbon Steel Flat Products from the Netherlands, 67 Fed. Reg. 9956, 9956-57 (Dep't Commerce Mar. 5, 2002) (final results of changed circumstances review) (**"CRS from the Netherlands"**); Certain Hot-Rolled Lead and Bismuth Carbon Steel Products from the United Kingdom, 65 Fed. Reg. 13713, 13714 (Dep't Commerce Mar. 14, 2000) (final results of changed circumstances review) (**"Hot-Rolled Lead and Steel"**); Roller Chain, Other Than Bicycle, from

---

[8] If no administrative review of an antidumping duty order is requested, Commerce will instruct Customs to automatically assess antidumping duties "at rates equal to the cash deposit of, or bond for, estimated antidumping duties or countervailing duties required on that merchandise at the time of entry, or withdrawal from warehouse, for consumption . . . ."  19 C.F.R. § 351.212(c).  An automatic assessment is in some ways the functional equivalent of a completed administrative review.

Japan, 64 Fed. Reg. 66889, 66890 (Dep't Commerce Nov. 30, 1999) (final results of changed circumstances review).

Specifically, the facts of CRS from the Netherlands are strikingly similar to the present action.  Commerce had published an antidumping duty order for the subject imports on August 19, 1993.  About six years later, Commerce initiated a sunset review and revoked the order on certain steel products from several countries, including the Netherlands, effective January 1, 2000.  See Certain Carbon Steel Products from Canada, Germany, Korea, the Netherlands, and Sweden, 65 Fed. Reg. 78467 (Dep't Commerce Dec. 15, 2000) (revocation of order).  After the order was revoked, certain domestic parties requested a changed circumstances review to retroactively revoke the order to August 19, 1993, because they expressed a lack of interest in the order with respect to that time period.  They indicated that their revocation request pertained to all unliquidated entries made from August 19, 1993 through January 1, 2000.  The antidumping duty order at issue was repeatedly subject to periodic administrative reviews conducted and completed by Commerce within that time period.  See, e.g., Certain Cold-Rolled Carbon Steel Flat Products From the Netherlands, 61 Fed. Reg. 48465 (Dep't Commerce Sept. 13, 1996) (final results of administrative review for August 18, 1993 to July 31, 1994).  Commerce initiated a changed circumstances review and ultimately revoked

the order to the effective date of August 19, 1993.  CRS from the Netherlands, 67 Fed. Reg. at 9956-57.

In the present case, Commerce revoked the order to the effective date of October 1, 2003.  Then, in 2005, NART expressed a lack of interest in the order and requested that it be revoked retroactively to 1995.  The Court sees no substantive difference between the facts of CRS from the Netherlands and the present action.  In its refusal to initiate the changed circumstances review, Commerce did not cite to or attempt to distinguish this line of agency decisions.[9]

In both its refusal to initiate the changed circumstances review and its response to NART's motion, Commerce relies on Coumarin from PRC.  See Coumarin from the People's Republic of China, 69 Fed. Reg. 24122 (Dep't Commerce May 3, 2004) (final results of changed circumstances review) (**"Coumarin from PRC"**).

---

[9] In its response to NART's motion, Commerce claims that CRS from the Netherlands, Hot-Rolled Lead and Steel, and POS Cookware are irrelevant because they involved litigation settlements. Commerce designates these cases as litigation settlements because Commerce would not instruct Customs to liquidate entries covered by completed reviews until ongoing litigation concerning those reviews was dismissed.  Commerce claims that it settled this litigation pursuant to its authority to conduct litigation on behalf of the United States under 28 U.S.C. § 516 and that therefore, it is not bound by any decisions made in the course of that litigation.  In response, NART aptly points out that in those investigations, Commerce revoked the orders retroactively pursuant to the agency's authority under 19 U.S.C. § 1675(b) and (d) and/or § 1677m(h).  Commerce's argument has no merit, and its reasoning in those investigations is relevant to establishing agency precedent.

Commerce asserts that this determination establishes that it has a longstanding practice wherein revocations are not effective as to entries subject to completed administrative reviews. To support this claim, Commerce cited to the following language:

> It is the Department's practice to revoke an antidumping duty order so that the effective date of revocation covers entries that have not been subject to a completed administrative review. If an administrative review was not requested, the Department's practice is to revoke the order after the most recent period for which the Department has issued assessment instructions to U.S. Customs and Border Protection.

Issues and Decision Memorandum, Coumarin from PRC, A-570-830, 3 (May 3, 2004), available at http://ia.ita.doc.gov/frn/ (citations omitted).

Despite this broad language, Coumarin is distinguishable for two important reasons. First, in its Coumarin decision, Commerce recognized that it had the authority to revoke the order to "the earliest date for which there are unliquidated entries." Id. at 4. Because there were no unliquidated entries before the date of the last completed review, Commerce was not confronted with the same situation as in the present action (i.e., there are unliquidated entries that predate the most recent completed administrative review).[10] Second, the domestic

---

[10] According to the Court's understanding, the domestic industry in Coumarin ceased production during the summer of 2002. No

(footnote continued)

parties in Coumarin did not express a lack of industry support retroactive to the earlier date. On the contrary, the domestic industry made it clear that it supported the later date of revocation, because it did not cease production until late 2002. Id. at 2. In the present case, a change of heart concerning industry support is precisely the reason NART has requested a changed circumstances review. Consequently, Commerce has failed to establish that it followed agency precedent when it refused to initiate NART's request.

"[W]hen an agency departs from its practice, it must 'clearly set forth' the ground 'so that the reviewing court may understand the basis of the agency's action and so may judge the consistency of that action with the agency's mandate.'" Hangzhou Spring Washer Co. v. United States, 29 CIT __, __, 387 F. Supp. 2d 1236, 1246 (2005) (quoting Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade, 412 U.S. 800, 808 (1973)). As noted above, Commerce does not attempt to distinguish the reasoning set forth in CRS from Netherlands from the present case. Of course, an agency has the discretion to change its

---

administrative review was requested for the period February 1, 2002 to January 31, 2003. Because no review was requested, Commerce issued assessment instructions in accordance with 19 C.F.R. § 351.212(c). Commerce then stated that because the parties did not request an administrative review, and the automatic assessment instructions were posted, "February 1, 2003 is the earliest date for which there are unliquidated entries." Issues and Decision Memorandum, Coumarin from PRC 4.

policies and practices as long as they are reasonable and consistent with their statutory mandate. "Commerce may adapt its views and practices to the particular circumstances of the case at hand, so long as the agency's decisions are explained and supported by substantial evidence on the record." Save Domestic Oil, Inc. v. United States, 26 CIT 1380, 1395, 240 F. Supp. 2d 1342, 1357 (2002). In this case, Commerce did not attempt to explain why it acted contrary to its own precedent. As such, Commerce's decision is remanded for further consideration.

## IV. CONCLUSION

In light of the foregoing, Commerce's decision to not initiate the changed circumstances review requested by NART is remanded for further consideration. A separate order will be issued accordingly.

/s/ Richard W. Goldberg
**Richard W. Goldberg
Senior Judge**

**Date:    December 21, 2007
          New York, New York**

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TRUSTEES IN BANKRUPTCY OF NORTH AMERICAN RUBBER THREAD CO., INC., FILMAX SDN. BHD., HEVEAFIL USA, INC., AND HEVEAFIL SDN. BHD.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES,<br><br>　　　　Defendant. | Before: Richard W. Goldberg,<br>　　　　　Senior Judge<br><br>Consol. Court No.　05-00539 |

## ORDER

Upon consideration of Plaintiffs' motion for judgment upon the agency record and briefs in support thereof, Defendant's briefs in opposition thereto, upon all other papers and proceedings had herein, and upon due deliberation, it is hereby

**ORDERED** that Commerce's decision not to initiate the changed circumstances review requested by Plaintiff Trustees in Bankruptcy of North American Rubber Thread Co., Inc. (**"NART"**) is remanded; and it is further

**ORDERED** that Commerce explain, if it is able, its basis for refusing to initiate the changed circumstances review, in light of its own past practice in <u>Porcelain-on-Steel Cookware from Mexico</u>, 67 Fed. Reg. 19553 (Dep't Commerce Apr. 22, 2002); <u>Certain Cold-Rolled Carbon Steel Flat Products from the Netherlands</u>, 67 Fed. Reg. 9956 (Dep't Commerce Mar. 5, 2002); <u>Certain Hot-Rolled Lead and Bismuth Carbon Steel Products from the United Kingdom</u>, 65 Fed. Reg. 13713 (Dep't Commerce Mar. 14, 2000); and it is further

**ORDERED** that if Commerce is unable provide a reasonable explanation for its refusal to initiate the changed circumstances review, it must initiate the review; and it is further

    **ORDERED** that Commerce shall, within sixty (60) days of the date of this Order, issue a remand determination in accordance with the instructions provided herein; and it is further

    **ORDERED** that the parties may, within twenty (20) days of the date on which Commerce issues its remand determination, submit briefs addressing Commerce's remand determination, not to exceed twenty (20) pages in length; and it is further

    **ORDERED** that the parties may, within twenty (20) days of the date on which briefs addressing Commerce's remand determination are filed, submit response briefs, not to exceed fifteen (15) pages in length.

    **SO ORDERED.**

                                                          _/s/ Richard W. Goldberg_
                                                          **Richard W. Goldberg**
                                                          **Senior Judge**

**Date:**      **December 21, 2007**
                **New York, New York**

## NOTICE OF ENTRY AND SERVICE

      This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

      Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

      Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

      Tina Potuto Kimble
      Clerk of the Court

Date: _____    By: _____
                                                                               Deputy Clerk